IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GRAPHICS PROPERTIES HOLDINGS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : C.A. No. 13-864-LPS | |
| | : | |
| ASUS COMPUTER INTERNATIONAL, ASUS TECHNOLOGY PTE LTD., and ASUSTEK COMPUTER INC. | : | |
| | : | |
| Defendants. | : | |

Brian E. Farnan, Rosemary J. Piergiovanni, FARNAN LLP, Wilmington, DE.

Adam S. Rizk, Andrew H. DeVoogd, Daniel Weinger, Jack C. Schecter, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., Boston, MA.

  Attorneys for Plaintiff.


John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE.

John P. Schnurer, Kevin J. Patariu, Tawen Chang, PERKINS COIE, San Diego, CA.

  Attorneys for Defendants.

**MEMORANDUM OPINION**

September 29, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendants ASUS Technology Pte Ltd. ("ASUS Singapore") and ASUSTek Computer Inc.'s ("ASUS Taiwan," collectively the "Foreign Defendants") motion to dismiss for lack of personal jurisdiction and improper venue. (D.I. 25) For the reasons discussed below, the Court will deny the Foreign Defendants' motion.

## PROCEDURAL BACKGROUND

### I. The 2012 Action (C.A. No. 12-210-LPS)

Plaintiff Graphics Properties Holdings, Inc. ("GPH") filed an action against ASUS Computer International ("ASUS California"), ASUS Singapore, and ASUS Taiwan on February 1, 2012. (C.A. No. 12-210 D.I. 1) GPH filed an Amended Complaint on March 27, 2012. (*Id.* at D.I. 8) In its Amended Complaint, GPH asserted U.S. Patent Nos. 5,896,119 (the "'119 patent"), 6,816,145 (the "'145 patent"), and 8,144,158 (the "'158 patent") against all three defendants. The defendants collectively moved to dismiss the action for lack of jurisdiction or, in the alternative, to transfer. (*Id.* at D.I. 11)

On October 11, 2012, the Court heard oral argument on the motion and denied the motion as to ASUS California with respect to Plaintiff's allegations of infringement of the '145 and '158 patents. (*Id.* at D.I. 30) In all other respects, the motion remained pending. (*Id.*) The Court ordered that the parties propose a schedule for jurisdictional discovery and supplemental briefing as to all three defendants. (*Id.*) Before the parties filed the proposed jurisdictional discovery schedule, they reached agreement for GPH to dismiss the Foreign Defendants and to pursue jurisdictional discovery only against ASUS California. (*Id.* at D.I. 31, 31-1) Jurisdictional discovery moved forward as to ASUS California, and the parties completed supplemental

1

briefing. On November 19, 2013, the parties entered into an agreement whereby ASUS California withdrew its motion to transfer and GPH dismissed certain claims. (*Id.* at D.I. 171) The parties' actions mooted the Court's prior opinion.

## II.    The 2013 Action (C.A. No. 13-864-LPS)

On May 17, 2013, GPH filed a second action against ASUS California, ASUS Taiwan and ASUS Singapore. (D.I. 1) GPH amended this complaint on July 19, 2013. (D.I. 7) In this Amended Complaint, GPH asserted that ASUS tablets, including the Nexus 7, infringe U.S. Patent Nos. 6,650,327 (the "'327 patent") and 5,717,881 (the "'881 patent"). The Foreign Defendants filed their motion to dismiss for lack of personal jurisdiction on December 31, 2013. (D.I. 25)

## FACTUAL BACKGROUND

ASUS Taiwan is a Taiwanese corporation with its principal place of business in Taiwan. (C.A. 12-210 D.I. 14 at ¶ 2) The accused products are designed and manufactured in Taiwan or China. (*Id.* at ¶ 8) ASUS Taiwan does not directly sell the accused products in Delaware. (*Id.* at ¶ 9) Instead, it sells title to the products to ASUS Singapore in Taiwan or China. (*Id.* at ¶ 10)

ASUS Singapore is a Singaporean corporation that is 100% owned by ASUS Taiwan and has its principal place of business in Singapore. (*See* D.I. 29 Ex. 4 at 101; C.A. No. 12-210 D.I. 15 at ¶ 2) ASUS Singapore does not directly sell the accused products in Delaware either. (C.A. No. 12-210 D.I. 15 at ¶ 9) Instead, the accused products sold in the United States are first sold by ASUS Singapore to ASUS California. (*Id.* at D.I. 16 at ¶ 9)

ASUS California is 100% owned by ASUS Taiwan. (*See* D.I. 29 Ex. 4 at 100) ASUS California generally receives products from ASUS Singapore at ports or airports in California.

2

(C.A. No. 12-210 at ¶ 10) ASUS California then sells the products to resellers throughout the United States, including Delaware. *(See, e.g.,* D.I. 29 ¶ 6) ASUS California does not contest jurisdiction in Delaware.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a case based on the court's lack of personal jurisdiction over that party. Determining the existence of personal jurisdiction requires a two-part analysis – one statutory and one constitutional.[1] First, the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie

---

[1] With regard to the statutory inquiry, the court applies the law of the state in which the district court is located; as to the constitutional inquiry, in a patent case the court applies the law of the Federal Circuit. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

3

case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

## DISCUSSION

### I. The Delaware Long-Arm Statute

The Delaware long-arm statute, in relevant part, states that:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State; . . .
> >
> > (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

10 Del. C. § 3104. GPH does not allege that jurisdiction exists under any one prong of Delaware's long-arm statute. Instead, GPH asserts that personal jurisdiction exists under a "dual jurisdiction" or "stream of commerce" theory that implicates two portions of the long-arm

4

statute: subsection (c)(1) and (c)(4).² Whether the Delaware long-arm statute indeed encompasses a steam-of-commerce theory for personal jurisdiction is a question that this Court has struggled to answer.

The Delaware long-arm statute "has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). In *LaNuova*, the Delaware Supreme Court noted, in a footnote, that:

> It is conceivable that a tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.

*Id.* at 768 n.3. Subsequently, Delaware Superior Court cases have held that this footnote stands for the proposition that "when a [defendant] has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts," even if no subsection of the long-arm statute is fully satisfied, "jurisdiction is appropriate under [partial satisfaction of] § 3104(c)(1) and (c)(4)." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *see also Wright v. Am. Home Products Corp.*, 768 A.2d 518, 530-31 (Del. Super. 2000). In applying this theory, "one must take great care not to overemphasize §§ 3104(c)(1) or (c)(4)."

---

²Subsection (c)(1) confers "specific" jurisdiction over a non-resident defendant; subsection (c)(4) confers "general" jurisdiction. *See, e.g., LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998). "Specific jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum. . . . It contrasts with general jurisdiction, in which the defendant's contacts have no necessary relationship to the cause of action." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 n.10 (Fed. Cir. 1994) (internal citations and quotation marks omitted); *see also Boone*, 724 A.2d at 1155.

5

*Boone*, 724 A.2d at 1158. The "indicia of activity under § 3104(c)(4)" need not "rise to the level of 'general presence' as usually required." *Id.* Similarly, "when analyzing § 3104(c)(1) it is not important that the manufacturer itself act in Delaware." *Id.* Instead, if a defendant exhibits "an intent or purpose . . . to serve the Delaware market with its product," and "if the intent or purpose . . . results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product," then the long-arm statute is satisfied. *Id.* This approach, according to *Boone*, "best encompasses all of the intricacies of the stream of commerce theory." *Id.* at 1157-58; *see also Wright*, 768 A.2d at 530-31.

In applying *LaNuova*, *Boone*, and *Wright*, this Court has held that "[t]he dual jurisdiction concept arises from at least partial satisfaction of subsections (1) and (4) of the Delaware long-arm statute . . . . Dual jurisdiction may be established when a manufacturer has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts." *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (internal quotations omitted). Under this approach, jurisdiction exists when a defendant displays "an intent to serve the Delaware market" and "this intent results in the introduction of [a] product into the market and . . . plaintiff's cause of action arises from injuries caused by that product." *Id.* at 267-68; *see also W.L. Gore & Assocs., Inc. v. Label Technologies, Inc.*, 2009 WL 1372106, at *3 (D. Del. May 15, 2009) ("Delaware courts have held that personal jurisdiction is proper under the Delaware long-arm statute under a stream of commerce theory resulting from only 'partial satisfaction' of §§ 3104(c)(1) and (c)(4)."); *Power Integrations*, 547 F. Supp. 2d at 371.

In at least one recent decision, another Judge in this District reached a contrary conclusion, predicting that the Delaware Supreme Court would not embrace the "dual

6

jurisdiction" theory. *See Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969 (D. Del. 2013). In *Round Rock*, the Court suggested that the *LaNuova* footnote stands for the unremarkable proposition that:

> the (c)(1) and (c)(4) subsections involve overlapping concepts, and there thus might be times when the set of facts that establishes general jurisdiction under (c)(4) also establishes specific jurisdiction under (c)(1), and thus the jurisdiction would be "dual." Perhaps an interesting observation, but one meaningless for development of the law, and hence properly relegated to a footnote.

*Id.* at 976. *Round Rock* further explained that although the Delaware Superior Court has adopted the dual jurisdiction theory, in doing so

> the Superior Court was consistent with one principle of the Supreme Court (the long arm statute should reach non-residents to the maximum extent possible) but was inconsistent with two other principles (the long arm statute should be separately analyzed from due process considerations, and its interpretation should flow from the statutory language).

*Id.* Accordingly, *Round Rock* held that it could not "agree, or predict, that the Delaware Supreme Court would recognize 'dual jurisdiction.'" *Id.* at 977; *see also Liqui-Box Corp. v. Scholle Corp.*, 2013 WL 3070872 (D. Del. June 17, 2013) (internal quotation marks omitted) ("[T]he constitutionally-accepted stream of commerce theory [of personal jurisdiction] does not fit neatly into any section of § 3104.").

In light of the differing views on this issue, the Court must first address whether it will continue to apply the dual jurisdiction theory of personal jurisdiction under the Delaware long-arm statute. Because the Delaware Supreme Court has not expressly decided the issue, the Court's role here is limited to "predict[ing] how that tribunal would rule" on this issue of state law. *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014). "In doing so, we give due deference to

7

the decisions of" the Delaware Superior Court, although they are not controlling. *Id.*; *see also Round Rock*, 967 F. Supp. 2d at 977 (agreeing that "the conclusion to be drawn from the Superior Court cases" is that dual jurisdiction is consistent with Delaware long-arm statute, but adding that this Court is "not bound to follow those cases" and merely gives them "some weight").[3]

The Delaware Supreme Court has had several opportunities to reject the dual jurisdiction theory but has refrained from doing so. *See Boone*, 724 A.2d at 1156, *aff'd*, 707 A.2d 765 (Del. 1998); *Wright*, 768 A.2d at 531 ("In sum, the Court finds that §§ 3401(c)(1) and (c)(4) provide a basis for jurisdiction over the French defendants."), *appeal denied*, 755 A.2d 389 (Del. 2000). Indeed, no Delaware state court has rejected the dual jurisdiction theory. *See LaNuova*, 513 A.2d at 768 n.3; *Boone*, 724 A.2d at 1156-58; *Wright*, 768 A.2d at 518-31; *Crane v. Home Depot, Inc.*, 2008 WL 2231472, at *4 (Del. Super. May 30, 2008) ("[T]his Court may exercise personal jurisdiction through the stream of commerce theory.").

Moreover, it is uncontested that "Delaware's long arm statute . . . is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust & Banking (Bah.) Ltd.*, 611 A.2d 476, 480-81 (1992). Consistent with the Due Process Clause, a party may be subject to personal jurisdiction when that party does "something more than simply placing a product into the stream of commerce." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (internal quotation marks omitted); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The substantial

---

[3]Delaware does not have an intermediate appellate court. Decisions of Delaware's trial courts – Superior, Chancery, and Family Court – are subject to appellate review only by the Delaware Supreme Court. *See generally* Del. Code Ann. tit. 10, §§ 141-50, 341-51, 541-46, 921-29.

8

connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

Given this record, and particularly the fact that no Delaware state court has rejected the assertion of personal jurisdiction under the dual jurisdiction theory, the Court concludes that the Delaware Supreme Court, if faced with the issue, would hold that the "stream-of-commerce" theory does provide a basis for personal jurisdiction under Delaware law, even though the theory is not expressly authorized by Delaware's long-arm statute. The Court reaches this conclusion notwithstanding the contrary, and not unreasonable, prediction of a fellow Judge of this Court.

The Court must next determine whether the Foreign Defendants are subject to jurisdiction under the theory of "dual jurisdiction." "[T]he dual jurisdiction analysis requires a showing of both: (1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product." *Belden Techs., Inc.*, 829 F. Supp. 2d at 267-68. The Court finds that both of these requirements are satisfied by the Foreign Defendants' conduct.

"A non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations*, 547 F. Supp. 2d at 373; *see also Belden Techs., Inc.*, 829 F. Supp. 2d at 268 (finding that intent existed where (1) Delaware was not specifically targeted, (2) foreign party made at least four sales to Delaware customers, and (3) there was no indication that non-resident parties directed sales to Delaware customers to cease; "[t]hat [the non-resident defendant] did not

9

specifically target Delaware is of no moment under these circumstances") (citing *Boone*, 724 A.2d at 1161).

Here, the record shows that the Foreign Defendants target the United States market by selling to ASUS California, which then sells the accused products to resellers for distribution across the United States. Of key significance is the fact that there are at least three physical resale outlets (Best Buy stores) inside Delaware that stock and sell the accused devices (D.I. 29 at ¶ 6), and the record reflects that the Foreign Defendants are aware of and actively utilize these reseller outlets to sell the accused devices (D.I. 29 Ex. 1). Hence, there is evidence not only of the Foreign Defendants targeting the United States generally but also of them targeting Delaware specifically. The evidence of sales in Delaware also satisfies the second prong of the statutory analysis, as it demonstrates that the Foreign Defendants' intent resulted in the introduction of the accused devices in Delaware. (*See* D.I. 29 at ¶ 6)

## II. Due Process

Having determined that this Court has jurisdiction under Delaware's long-arm statute, the Court must next determine if "subjecting the nonresident defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment." *Hercules v. Leu Trust & Banking (Bah.) Ltd.*, 611 A.2d 476, 481 (1992). A defendant is subject to the jurisdiction of a federal court only when the defendant's conduct and connections with the forum state are such that it should "reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), such that exercising personal jurisdiction would not offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

10

In *Asahi*, 480 U.S. at 105, the Supreme Court split into two camps regarding the question of whether "mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes 'minimum contacts' between the defendant and the forum State" such that the requirements of constitutional due process were satisfied. Justice Brennan, writing for four justices, took the view that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause;" for, "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117 (plurality opinion). Justice O'Connor, also writing for four justices, rejected Justice Brennan's approach and concluded instead:

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.

*Id.* at 112 (plurality opinion) (internal citation omitted).

In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566-67 (Fed. Cir. 1994), the Federal Circuit found it was unnecessary to decide whether Justice O'Connor's or Justice Brennan's approach to the stream-of-commerce theory was the correct one. There, the Court found sufficient contacts with the forum state to support the exercise of personal jurisdiction under either articulation of the stream-of-commerce theory, as the defendants were alleged to have "made ongoing and continuous shipments of the accused infringing product into [the state] and maintained an established distribution network that encompassed [the state]." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363-64 (Fed. Cir. 2012) (citing *Beverly*

11

*Hills Fan*, 21 F.3d at 1561, 1563, 1565).

More recently, in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), the Supreme Court revisited the split of opinion but did not resolve it. Accordingly, the Federal Circuit's decision in *Beverly Hills Fan*, 21 F.3d at 1558 – which was handed down after *Asahi* and before *McIntyre* – controls. *See also AFTG-TG*, 689 F.3d at 1363-64 ("Because we must proceed on the premise that *McIntyre* did not change the Supreme Court's jurisdictional framework, we must apply our precedent that interprets the Supreme Court's existing stream-of-commerce precedents. That precedent is *Beverly Hills Fan* . . . .").

In its decisions, the Federal Circuit has emphasized the general proposition "that a court should not decide a legal issue when doing so is unnecessary to resolve the case at hand." *AFTG-TG, LLC*, 689 F.3d at 1364. In particular, "[i]f [the Defendant] is able to satisfy Justice O'Connor's test, there [is] no need to address whether the less restrictive test proposed by Justice Brennan should be the standard under Delaware law and under the due process clause." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1324 (Fed. Cir. 2005). Here, because the Court finds that the Foreign Defendants satisfy the O'Connor test, the Court need not engage in any further discussion of the differences between the O'Connor and Brennan tests.

The O'Connor test is satisfied when a party engages in "[a]dditional conduct . . . [to] indicate an intent or purpose to serve the market in the forum State, [such as] . . . advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. Here, as in *Beverly Hills Fan*, 21 F.3d at 1565, "[t]he

12

allegations are that defendants purposefully shipped the accused [product] into [Delaware] through an established distribution channel [and] [t]he cause of action for patent infringement is alleged to arise out of these activities." It is undisputed that the Foreign Defendants, by way of ASUS California, purposefully ship the accused devices into Delaware through established distribution channels such as Best Buy. (D.I. 29 at ¶ 6) The Foreign Defendants "purposefully avail [themselves] of the privilege of conducting activities within [Delaware], thus invoking the benefits and protections of its laws." *See McIntyre*, 131 S. Ct. at 2785. For this reason, the Foreign Defendants "could foresee being haled into court" in Delaware, *see Asahi*, 480 U.S. at 109, and exercising personal jurisdiction over them in this Court is not inconsistent with the Due Process Clause.

### III. "Arising From"

The Foreign Defendants raise a further challenge to this Court's exercise of jurisdiction. According to the Foreign Defendants, GPH's complaint fails to satisfy the "arising from" language of the Delaware long-arm statute. Section 3104(c) provides that "[a]s to a cause of action brought by any person ***arising from*** any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident." 10 Del. C. § 3104(c) (emphasis added). It follows from this "arising from" language that "[t]he court cannot base jurisdiction on events that occurred after the filing of [the] complaint." *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 697 (D. Del. 1998); *see also Round Rock*, 967 F. Supp. 2d at 974 ("Further, the existence of personal jurisdiction is evaluated at the time the complaint was filed.").

GPH concedes that no Foreign Defendant performs any relevant acts in Delaware; instead, GPH relies upon acts by third parties, such as Best Buy, in Delaware. (D.I. 28 at 3-5)

13

Hence, GPH is left to allege not direct infringement but only indirect infringement by the Foreign Defendants. Indirect infringement, whether contributory or induced, "requires knowledge of the existence of the patent that is infringed." *Global-Tech Apps., Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011). In its complaint, GPH alleges knowledge of the patents-in-suit exclusively through "the filing and service of this Complaint." (D.I. 7 ¶¶ 18, 26) Because any indirect infringement occurred only after the complaint, and personal jurisdiction can only be based on events before the complaint, the Foreign Defendants argue that personal jurisdiction is not present here.

However, "[t]he 'arising from' language in 10 Del. C. § 3104(c) [only] requires [that] the defendant's act set in motion a series of events which form the basis for the cause of action before the court." *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *9 (Del. Ch. July 14, 2008). "Moreover, it is the nature of the acts giving rise to a claim, rather than the nature of the claims, that determines whether a cause of action *arises from* contacts with the forum." *Id.* (internal quotation marks omitted). Because the Foreign Defendants' availment of the Delaware market through Best Buy set in motion a series of events which forms the basis for GPH's indirect infringement claims, the Court has jurisdiction.

The Foreign Defendants do correctly note that, to this point, GPH has only provided facts showing sales of accused devices in Delaware five months *after* the filing of the Complaint. Facts showing that the accused devices were on sale in Delaware prior to the filing of this suit will be required to sustain this Court's exercise of jurisdiction over the Foreign Defendants. Thus, although the Court is denying the Foreign Defendants' motion at this point, the Court will be prepared to reevaluate whether it can properly exercise jurisdiction over the Foreign Defendants as the case proceeds.

14

## CONCLUSION

For the reasons stated above, the Court will deny the Foreign Defendants' motion to dismiss. An appropriate Order follows.